Per curiam

Whatever construction may have prevailed in England upon their statute of limitations, it is clear with respect to our act, when a man hath obtained a grant of land, lie thereby gains a constructive possession, which continues utuil an actual adverse possession commences, and that ;d verse possession must be continued seven years, before the Jas intrandi, or right of *288 possession of the first grantee, is lost. A single act of entry cannot take away the grantee’s right of possession j because such entry may be made without any notoriety, whereas seven years actual possession affords notoriety, and as it were calls upon the owner to assert his right. In the present case, unless there hath been such actual possession for seven years, as is allowed of in law computations, the Plaintiff’s right, is not tolled. As to the time elapsed between the sixth of March, 1773, and first of June 1784, that was not allowed of by the express direction of two acts of the Genera! Assembly $ and the possession that can be counted in the present case, is only from the first June, 1784, to the time of the commencement of the action, which was short of seven years by two or three months. An objection hath been made to the propriety of disallowing the time between the first, of March, 1773, and the fifteenth of November, 1777, the act of 1777, only saying it should be disallowed when pleaded to actions brought; wiiereas the act of limitations is never pleaded in this action of ejectment. The answer to that is, ubi eadem est ratio, ibi eadem est lex, the reason of that provision was,- because during the time, that intervened between these two periods, there were no courts in this country $ does not this reason apply with equal force to an ejectment case as to any other? A man out of possession when the law provides him with no means to gain possession, should not have the not getting of possession during that time imputed to him as an abandonment of his property, any more in the case of a real estate than in that of a personal estate. What is still'a more full answer to the objection is this, that if the act of 1777, had not been made, the act of limitations would not have run during the time there were no courts in the country, to which the Plaintiff could apply for tlye recovery of his right. No laches in such case could be imputed to him, nor could any presumption be founded upon bisdelay, as there is in all cases where the act applies. The court here cited Co. Litt. in his chapter of Entries, where it is laid down, that a descent cast in time of war, will not toll the entry of him who hath the right of entry, because, saitls the book, where the courts are not open for the administration of justice, whether occasioned by rebellion, insurrection or foreign invasion, it is said to be time of war, and laches are not then imputable to the *289 party. So here, tho’ the act had not been made, the intervening time was such as could not subject the Plaintiff to the imputation of ladies. He could not in that time assert his right. The courts of justice were shut up as to the possession of Edwards. In general, it is very much to be doubted whether such a possession had it continued for seven years, could.have tolled the entry of the owner — he had no deed nor any colour of title: but it is unnecessary to give any opinion upon this point now. The Defendant’s counsel 'hen proceeded to state other objections to the Plaintiff’s recovery — lie argued that t||e W()P(ja used jn the deed from Jane Fin-yaw to her son, were giie and grant; and the consideration, natural love and affection : it therefore could not be a bargain and sale, for want of a valuable consideration, and there were no words made use of to show the intent of the parties, that it should operate as a covenant to stand seised: therefore it must have been intended as a common law conveyance, and then it was void for want of livery and seisin. He cited 2 Bl. Com. 310, 316. 311, 227. This was answered on the part of the Plaintiff, by citing 5 Bac. Ab. 362. 2 Wils. 22, 78.
Per curiam — There is no doubt but that the conveyance in the present case, does operate as a covenant to stand seised, ut res magis vakat, and therefore that it is good in law,
The Defendant’s counsel then urged, that though there was no act of Assembly to be found in any of.the'printed books, previous to the date of the deed from Brice, the guardian, to Vassimore, in 1714, and to the proceedings of the O'-phan’s Court in the same year, the history of this country would prove rhere were Assemblies held previous to that time; the Lords Proprietors landed here in 1711, there are many old grants bearing date in 1711 and 1712, and some as early as the year 1706 ; the deed itself purports to he made pursuant to an act of the General Assembly,, and the Orphans Court on their record say, their consent to the contract was given pursuant to an act of Assembly.
Per curiam — As to this point the general rule is, that the court must declare, the statute law as it is to be seen in acts and statutes yet extant: that law however, is sometimes from necessity otherwise collected. If hath been said by very learned men, that many parts of the *290 common law, were acts of Parliament worn out by time. 2 Wils. 248. The common law is preserved and evidenced tiy judicial proceedings. In'the present case, there are judicial proceedings which .speak of an act of the Legislature that is not now extant, upon which the deed to Vassimore purports to be founded. The deeds of 1744 and 1764, prove Vassimore’s having a corner and boundary line in this tract of land. This proves that, for a long time after the date of Vassimore’s deed, the neighborhood recognized it as a valid transaction All these circumstances, but particularly the proceedings of the Court of Orphans, seem to be enough to justify the conclusion that the act of Assembly spoken of, in the proceedings of the Orphans’ Court, did once exist/-, but there is no absolute necessity for resting the cause upon this point 5 and as it is a new one, 'he court will not give a positive opinion upon it. The Defendant’s counsel then made another objection, which was, that in 1771, and for a considerable time before, up to April 1775, Cornell and Edwards had been in the actual possession of part of the land, namely, that part adjoining the river and creek, claiming it as their own under a grant from the King. As to the upper part, they had not. been in possession, neither bad the Finyaws any actual possession for fifty years back j therefore, as to the part held under the grant of 1774, Finyaw, the vendor, in 1791, at and previous to the time of his conveyance to the lessor of the Plaintiff, had no other means of acquiring the possession, but by a suit at law $ he had not tiie actual possession, but only & right of entry ; and that by the known rules of law, he could not sell or convey to another. For this he cited2 Bl. Com. 890. Co. Lilt. 214 a, and the case of Few and Mves, decided at Hillsborough last term. On the other side were cited Espinasse 433, who cites Salk. 423.— Upon this point the court were with the Defendant, and so gave in charge to the jury. They found the Defendant not guiliy as to all the land comprised in Brice’s deed to Vassimore, and guilty for the residue $ and there was judgment accordingly.
Noth. — Vide upon the first point, note to Strudwick v. Shaw, ante 5. Park v. Cochran et al. ante 178.—And upon the last, see Denniss v. Farr. 1 Mnrphey 138, Clark v. Arnold, 2 Hay. 287.